## B-Line Cab Co. v. Lake.

(Decided Nov. 30, 1937.)

WOODWARD, DAWSON & HOBSON and WILBUR FIELDS for appellant.

HAGAN & HAGAN and BECKHAM OVERSTREET for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellee, Mary Lake, recovered a judgment for $1,500 against appellant, B-Line Cab Company, for injuries sustained in an accident on the morning of December 7, 1934, at the intersection of Second and Walnut streets in Louisville, Ky., while she was a passenger in one of appellant's taxicabs. Appellant insists that the judgment should be reversed because the instructions are erroneous, and the verdict is excessive.

Mrs. Lake testified that she received information at about 4 o'clock in the morning that her husband had been arrested, and was at police headquarters. She walked to the corner of Second and Chestnut streets, hired one of appellant's taxicabs, and directed the driver to take her to police headquarters at Sixth and Jefferson streets. He drove north on Second street, and, at about the middle of the intersection of Second and Walnut streets, the taxicab was struck on the left side between the front and rear fenders by a Chevrolet automobile being driven east on Walnut street. Walnut and Second streets are each 36 feet wide from curb to curb at this point. The taxicab was knocked to the northeast corner of the intersection, where it struck and knocked down a telephone pole. The driver was knocked out of the taxicab, the pole fell upon him, and he was killed

almost instantly. The Chevrolet automobile, which had been stolen, was driven by a negro who ran away after the accident happened. Mrs. Lake also testified that the taxicab was traveling at a speed of 30 or 35 miles an hour as it was driven north on Second street toward Walnut street, and that the driver, as he approached the intersection, was talking to her about the number of arrests that had been made during the night. His head was turned to the right and his back was toward Third street, the direction from which the Chevrolet automobile was approaching. The proof showed that a gasoline filling station is located on the lot at the southwest corner of Walnut and Second streets, several feet back from the sidewalk, and one traveling north on Second street, when 40 feet south of the intersection, has an unobstructed view of Walnut street to Third street. The driver of an automobile on Second street, 60 feet south of the intersection, has an unobstructed view of Walnut street for a distance of 180 feet west of the intersection. This evidence was introduced for the purpose of showing that the driver of the taxicab, if he had been keeping a lookout, could have seen the approaching automobile on Walnut street in time to have avoided the collision. Mrs. Lake stated that the collision occurred at about the center of the intersection, and that she was unconscious for several hours from the moment of the impact.

The only other eyewitnesses who testified were Eugene Foushee and Richard Fuchs, who were introduced by appellant. Foushee was a soldier stationed at Fort Knox. He testified that he had an appointment to meet a friend at 4 a. m. at Second and Walnut streets to take him back to Fort Knox where he was due to report at 6:15 a. m. He was walking eastwardly on the north side of Walnut street towards its intersection with Second street, keeping a lookout for his friend, when he saw a Chevrolet automobile driven by a negro coming east on Walnut street at a speed of 45 or 50 miles an hour, which the driver did not change as he entered the intersection. He also saw the taxicab coming north on Second street at a speed of about 25 miles an hour, which was slackened to 12 or 14 miles an hour as it entered the intersection. The taxicab entered the intersection first. He stated that the collision occurred a little north of the center of the intersection. In other words, the taxicab had traveled further after entering

the intersection than had the Chevrolet automobile. Richard Fuchs testified that he was driving a milk truck for the Ewing-Von Allmen Dairy Company north on Second street toward Walnut street, about 30 or 35 feet behind the taxicab. The taxicab was traveling at about the same rate of speed as the truck, which was less than 25 miles an hour, the maximum speed permitted by the governor on the truck. The taxicab slowed down as it approached the intersection. He also stated that the collision occurred at a point a little past the center of the intersection; that is, to the northeast of the center. Concerning the speed of the Chevrolet automobile, he testified as follows:

"Q. Was it going as fast as fifty miles an hour, in your opinion? A. It seemed like it was, a new Chevrolet, I believe it was going as fast—with all the speed it had.

"Q. Was it a terrific impact? A. Well, it seemed like it knocked the taxicab up in the air about five or six feet when it hit it. It just knocked it way up in the air and then knocked it into the pole and crushed the pole."

There was also proof that the driver of the Chevrolet automobile applied the brakes about 20 or 25 feet from the point of the accident, and that it skidded that distance before striking the taxicab.

The appellant moved for a directed verdict in its favor, but the motion was properly overruled, since there was some evidence from which the jury might reasonably infer that the driver of the taxicab failed to keep a lookout or failed to use the highest degree of care to avoid coming in contact with the negro's car after his peril could have been discovered.

Instruction No. 1, after stating the respective duties of the drivers of the automobiles and defining the terms "highest degree of care" and "ordinary care," concluded as follows:

"Vandergriff, approaching on the right of the negro driving the other car, had the right of way through the intersection, unless you believe from the evidence that the negro actually entered the intersection first, in which event he had the right of way.

"It was the duty of that one not having the right of way to yield the right of way to the other who had it."

This part of the instruction is erroneous. It left to the jury the determination of the question whether the taxicab or the automobile driven by the negro entered the intersection first, when all evidence showed that the taxicab entered first and that its driver therefore had the right of way. Kentucky Statutes, section 2739g-37. The lowest estimate of the rate of speed of the Chevrolet automobile as it entered the intersection was 45 miles an hour. The physical facts indicate a much higher rate of speed. The highest rate of speed at which the taxicab traveled north on Second street, according to appellee's own testimony, was between 30 and 35 miles an hour. The other eyewitnesses testified that it slowed down as it approached the intersection, and this is not denied; but, conceding that it continued into the intersection at a speed of 35 miles an hour, it necessarily entered first, since the collision occurred at or north of the center of the intersection. The court should have instructed the jury as a matter of law that the driver of the taxicab had the right of way. As heretofore stated, the fact that he had the right of way did not entitle appellant to a directed verdict in its favor. It was still the duty of its driver to keep a lookout and exercise the highest degree of care for the safety of his passenger. He could not continue through the intersection oblivious to other traffic merely because he had the right of way, and he is not excused by the negligence of the driver of the other car unless such negligence was the sole cause of the accident. That was a question for the jury to determine. We find no error in the other instructions.

Appellant complains because the court refused to give instructions offered by it which were based on the theory that there was proof to the effect that the traffic light signal at the intersection of Walnut and Second streets was in operation at the time of the collision, and was green for traffic on Second street and red for traffic on Walnut street. The appellant's own witness, Richard Fuchs, the driver of the truck which was traveling north on Second street behind the taxicab, testified positively that there were no traffic signals. Eugene Foushee volunteered the statement, "The lights were not changing," but he did not say the traffic light signal was op-

erating. The evidence was not sufficient to authorize the instructions offered by appellant.

The appellant also offered an instruction on the speed of the negro's car and whether or not such speed was the sole cause of the collision, but this question was properly submitted in the instructions given by the court.

In view of our conclusion that the judgment must be reversed on account of the error in instruction No. 1, it is unnecessary to determine whether or not the verdict is excessive.

Judgment is reversed, for further proceedings consistent herewith.